# Board of Supervisors of Fairfax County, et al.

## v.

# Thompson Associates

Record No. 891329

June 8, 1990

Present: All the Justices

*T. David Stoner, Assistant County Attorney (David T. Stitt, County Attorney; George A. Symanski, Jr., Deputy County Attorney*, on briefs), for appellants.
*William L. Carey (Eric J. Berghold; Miles & Stockbridge*, on brief), for appellee.

JUSTICE LACY delivered the opinion of the Court.

This case involves the question whether a county may require a developer to build a service road as a prerequisite to approval of a site plan. A threshold issue is whether the trial court properly

ruled that the developer's suit was not barred by the statute of limitations. We will consider that issue first.

In 1977, Thompson Associates, a Virginia limited partnership (Thompson), undertook to construct an elderly care facility, known as The Virginian, on land owned along Route 50 in Fairfax County. In December, Thompson secured a special exception to the existing zoning classification which was necessary for the project. Later that month, Thompson submitted a site plan to Fairfax County for approval. By letter dated February 8, 1978, the Planning Review Branch of the County's Department of Environmental Management returned the site plan to Thompson's engineers with a request that the plan include a service road.

During meetings held with the County staff in the spring of 1978, Thompson objected to the service road, saying it was unnecessary. The County, however, continued to require the road as a prerequisite to site plan approval. Thompson then submitted a site plan including the service road which was finally approved by the County on August 1, 1978.

On August 15, 1978, Thompson and the County executed a construction agreement and Thompson posted a performance bond in the amount of $125,000 secured by a letter of credit. In the construction agreement, Thompson agreed "to construct and install all physical improvements located in dedicated rights-of-way or easements running to the Board or other public body . . . in accordance with the approved site plan and approved plans, specifications and profiles, or with any subsequently approved revision of any of them." The cost of constructing the service road was included in the amount of the bond.

No further action was taken regarding the service road until 1980. In February and March of that year, Thompson sought a waiver for the service road on the grounds that it was "not necessary because it served no purpose, went nowhere, had no offsite connection, and was a useless feature." The County denied the waiver by letter dated April 21, 1980, and stated "the section of service road on your project should be constructed at this time."

Thompson submitted another formal request for waiver two years later, December 15, 1982. The County continued to deny the waiver, and, because the agreement required completion of construction by August of 1980, the County, by certified letter, informed Thompson that "the project has not been completed and your agreement with the Board of Supervisors of Fairfax County

is in default." Discussions then ensued concerning the possible substitution of a pedestrian trail for the service road. These discussions never resulted in a firm agreement between the County and Thompson.

Four more years passed. Phase II of the project was completed and occupancy permits were issued in 1986. In August of 1986, the County again asserted that the project was in default and demanded that Thompson rebond the project to cure the default status. Thompson refused to rebond the project in its entirety, but did offer to rebond the service road. The County refused this offer and tried to call the letter of credit but was unsuccessful due to certification problems.[1]

In August of 1987, Thompson filed this suit challenging the County's legal authority to require a service road. Thompson sought declaratory relief under two counts. The first count sought a declaration that the County had no right to hold Thompson in default and call the bond. The second count sought a similar ruling that the County "violated petitioner's constitutional rights by declaring The Virginian in default and by wrongfully calling and taking Petitioner's $125,000 which secured its obligations as developer of the Project." Finally, Thompson requested an injunction prohibiting the County from denying occupancy permits for Phase III of the project based on the unlawful declaration of default, along with damages of $125,000 and attorney's fees.

The trial court considered Thompson's claim as an action under 42 U.S.C. § 1983 and § 1988. Holding that the claim was not time-barred, the trial court stated that the agreement between Thompson and the County was an "ongoing agreement, and the Statutes of Limitations do not begin to run while work remains in progress." Characterizing Thompson's repeated attempts to have the service road requirement waived as a utilization of the "County's internal appeal process," the trial court concluded that Thompson was damaged and the limitations period began to run in 1986 when "the County clearly rejected all appeals and demanded that the service road be built." Based on its determination that the damage occurred in 1986, the trial court held that Thompson's suit was timely filed. We disagree.

---

[1] The letter of credit was called by the County in 1987, subsequent to Thompson's filing the suit.

■ The trial court's error is based on two misconceptions. First, the repeated attempts by Thompson to secure a waiver of its obligation to build the service road do not constitute "an internal appeal process." If they did, Thompson, the defaulter, would have the ability to control the running of the statute indefinitely merely by making repeated new requests for waivers. In this case, he requested the waiver in 1980, 1982, and 1986 and the County consistently denied each request. The "internal appeal process" available to Thompson for resolution of these issues is found in Title 15.1, specifically the procedures available under §§ 15.1-475 and -496.1.[2]

■ The trial court also erroneously characterized the County's actions in 1986 as "the first occasion that the County clearly rejected all appeals and demanded that the service road be built." The County's declaration of default in 1980 was as clear and as final as its declaration in 1986. The difference in 1986 was that Thompson decided that the County meant what it had said when it required the construction of a service road in 1977, 1980, and 1982.

When the County rejected the site plan in 1977, Thompson knew that the County would not approve the site plan without an agreement to build a service road. The August 15, 1978 agreement with the County also included Thompson's obligation to construct the service road. Additionally, the amount of the performance bond, executed the same date, included funds securing the construction of the service road. At this point, Thompson was fully aware of the County's position and had incurred expense to comply with that condition when it paid for the bond. *See gener-*

---

[2] Code § 15.1-475 (1977) provided in pertinent part:

If a local commission or other agent disapproves a plat and the subdivider contends that such disapproval was not properly based on the ordinance applicable thereto, or was arbitrary or capricious, he may appeal to the circuit court having jurisdiction of such land and the court shall hear and determine the case as soon as may be.

Code § 15.1-496.1 provides in pertinent part:

An appeal to the board may be taken by any person aggrieved or by any officer, department, board or bureau of the county or municipality affected by any decision of the zoning administrator or from any order, requirement, decision or determination made by any other administrative officer in the administration or enforcement of this article or any ordinance adopted pursuant thereto. Such appeal shall be taken within thirty days after the decision appealed from by filing with the zoning administrator, and with the board, a notice of appeal specifying the grounds thereof.

*ally Delaware State College* v. *Ricks*, 449 U.S. 250, 258, 262 (1980).

The time at which a cause of action under 42 U.S.C. § 1983 accrues is a question of federal law. *Bireline* v. *Seagondollar*, 567 F.2d 260, 263 (4th Cir. 1977); *Cox* v. *Stanton*, 529 F.2d 47, 50 (4th Cir. 1975); *see also Delaware State College* v. *Ricks*, 449 U.S. 250 (1980). These decisions have established that the point of accrual is when the plaintiff knows or has reason to know of the injury which is the basis of his action. *Bireline*, 567 F.2d at 263; *Cox*, 529 F.2d at 50; *Young* v. *Clinchfield R.R. Co.*, 288 F.2d 499, 503 (4th Cir. 1961); *see Chardon* v. *Fernandez*, 454 U.S. 6, 8 (1981); *Ricks*, 449 U.S. at 257-59.

In this case, accrual of all the elements needed to sustain litigation under 42 U.S.C. § 1983—the alleged illegality of the County's service road requirement and damages allegedly incurred as a result thereof—were in place in 1978. At that point, Thompson could have filed suit against the County, then continued the action during negotiations seeking to resolve the service road issue through waiver or settlement. Rather, Thompson waited for nine years, well beyond the limitations period for either contract or personal injury actions, constructed all three phases of The Virginian project, commenced occupancy in two of the phases, and every few years asked the County to waive the service road requirement. In 1987, rather than returning to the County with another waiver request, Thompson attempted to escape the obligation it had incurred nine years earlier by pursuing legal action. Its right to do so under 42 U.S.C. §§ 1983 and 1988, however, was time-barred.[3]

Thompson argues that its suit is not time-barred because "[t]he primary relief sought . . . was a declaration by the court that the County's default of the project in 1986 was improper, based as it was on the illegal requirement of the service drive. Due to the

---

[3] The trial court ruled that the County was limited to the statute identified in its answers to interrogatories, Code § 15.1-496.1, and, therefore, denied the County's defense of the statute of limitations. Yet, the trial court never discussed or rejected the applicability of that statute. Nevertheless, interrogatories are tools of discovery used to narrow the issues for trial and avoid the possibility of surprise; the County clearly raised the statute of limitations in its answer and Thompson was on notice of the County's continuing position that the injury arose in 1978 and, therefore, his action was time-barred. Furthermore, the issue of the applicable statute of limitations was an issue of law, which the County could not have conceded in its answer to interrogatories. *See Cofield* v. *Nuckles*, 239 Va. 186, 194, 387 S.E.2d 493, 498 (1990).

'defensive nature' of a declaratory judgment action, normal periods of limitation applied to substantive claims do not apply. . . ."

■ However, the applicability of the statute of limitations is determined by the object of the litigation, not the form in which it is filed. *Friedman* v. *Peoples Service Drug Stores*, 208 Va. 700, 160 S.E.2d 563 (1968); *Birmingham* v. *Chesapeake & Ohio Railway Co.*, 98 Va. 548, 37 S.E. 17 (1900). If the law were otherwise, the statute of limitations could be rendered meaningless merely by the filing of a declaratory judgment action. As noted above, Thompson sought the same declaration in both counts. Likewise, the relief sought in both counts included a return of the bond money, an injunction preventing the County from denying Thompson occupancy permits for phase III of The Virginian, and the recovery of attorney's fees. Thus, Thompson was not using the declaratory judgment count solely in a defensive posture, but was seeking the same affirmative relief as requested in his deprivation of constitutional rights count. Under the above cited principles, Thompson may not use the declaratory judgment statute as a vehicle to circumvent the applicable statute of limitations.

For the above reasons, we will reverse the judgment of the trial court and dismiss the petition.

*Reversed and dismissed.*