PRESENT: All the Justices

KAPPA SIGMA FRATERNITY, INC.
A/K/A KAPPA SIGMA MEMORIAL
FOUNDATION, ET AL.

v.  Record No. 022435   OPINION BY JUSTICE BARBARA MILANO KEENAN
                                    October 31, 2003
KAPPA SIGMA FRATERNITY, ET AL.

FROM THE CIRCUIT COURT OF ALBEMARLE COUNTY
Paul M. Peatross, Jr., Judge


In this appeal, the primary issue is whether a statute of limitations defense is applicable to bar a claim that certain amendments to a nonstock corporation's articles of incorporation are invalid.

Kappa Sigma Fraternity (the Fraternity) is an unincorporated membership association that was founded in 1869 at the University of Virginia.  At the time this case was heard in the circuit court, the Fraternity had over 158,000 alumni and about 215 undergraduate chapters located at colleges and universities in the United States and Canada.  The Fraternity is governed by a five-member "Supreme Executive Committee" (Fraternity Committee) and meets on a biennial basis at "Grand Conclaves" held every odd-numbered year.

In 1965, the Fraternity acquired a contract right to purchase certain real property in Albemarle County.  The Fraternity planned to use the property, which was about 17 acres in size and contained various improvements, as the Fraternity's

permanent headquarters and as a "perpetual memorial" to the Fraternity.

In 1966, the Fraternity formed a nonstock corporation, Kappa Sigma Fraternity, Inc., a/k/a Kappa Sigma Memorial Foundation (the Foundation), to hold legal title to the property. The Fraternity assigned its contract to purchase the property to the Foundation, and the Foundation acquired legal title to the property.

At the time of purchase, the property contained a "main house" and a "carriage house." The Fraternity used these facilities to house its administrative offices and a museum dedicated to the history of the Fraternity.

The Foundation's original articles of incorporation stated that the purpose of the Foundation was "to operate an international fraternity and to promote friendship and brotherly feeling among its members." The articles also defined the membership classes of the Foundation:

> (1) ACTIVE CHAPTERS shall be those chartered by the Board of Directors of the corporation and shall be composed of four or more male persons who are students at some one college or university.
>
> (2) ALUMNI CHAPTERS shall be those chartered by the Board of Directors of the corporation and shall be composed of ten or more alumni of the fraternity residing in or near the same locality.
>
> (3) ALUMNI MEMBERS shall be those alumni of the fraternity who are not affiliated with an alumni chapter.

2

The articles accorded each of these membership classes voting rights and provided that each alumni member present at the biennial meeting was entitled to cast one vote. The articles also provided for a five-member Board of Directors (the Board) "elected by the vote of the members of the corporation at the [biennial] meeting of the corporation to be held every odd numbered calendar year."

The Foundation's biennial meeting was intended to coincide with the Fraternity's biennial "Grand Conclave." The five-member Fraternity Committee served as the Foundation's original Board. However, after 1967, the members of the Fraternity Committee, which were elected by the Fraternity every two years, and the membership of the Foundation's Board began to diverge.

In 1967, the Board approved certain amendments to the Foundation's articles of incorporation (the 1967 amendments). These amendments attempted to transform the Board of Directors into a Board of Trustees and provided that the purpose of the Foundation was "to hold property, both real and personal, for the benefit of the Kappa Sigma Fraternity." The 1967 amendments further provided that the "Trustees shall serve for life." The 1967 amendments were not ratified by the members of the Foundation.

3

In 1974, the Board again voted to amend the Foundation's articles of incorporation (the 1974 amendments) to qualify the corporation as a charitable organization exempt from federal income taxes under Section 501(c)(3) of the Internal Revenue Code. The 1974 amendments restated the purpose of the corporation as follows:

> The Corporation is organized for educational and charitable purposes. It shall have the power to hold title to property, both real and personal. It shall have the power to solicit funds, to grant scholarships, to conduct leadership training schools and to cooperate with educational, medical and other charitable institutions.

The 1974 amendments provided that the "[c]orporation shall have no members," but these amendments were approved only by the Board. The members never ratified the 1974 amendments.

In the mid-1970s, the Foundation built a "training center" on the property to serve as a conference center. The training center contained a large meeting room and dormitory space to house visiting members of the Fraternity and other guests. The Foundation sponsored leadership conferences at the training center for the Fraternity's undergraduate chapters. The training center also was made available for the use of other charitable and educational institutions.

There were various "lease arrangements" between the Fraternity and the Foundation. In one such arrangement, the Fraternity entered into a "triple net lease obligation" with the

4

Foundation to lease space on the premises for the Fraternity's headquarters. In exchange for its use of the property, the Fraternity paid all the property's maintenance costs, expenses, taxes, and insurance. In addition, the Fraternity provided all the Foundation's administrative services and supervised the training facility for the Foundation.

In recent years, various disputes arose between the Fraternity and the Foundation concerning the lease arrangement, the solicitation of funds for the Foundation, and the Foundation's use of its charitable assets. In 1999, the Foundation decided to sell the real property for certain stated reasons, including to optimize use of the Foundation's assets and to comply with the Foundation's charitable purpose.

In a letter transmitted in November 1999, the Foundation informed the Fraternity of the Foundation's decision to sell its real property. In April 2001, the Foundation notified the Fraternity that the property had been listed for sale. The Foundation sought a price of $6,500,000 for the property.

The property, which is the Foundation's primary asset, had an appraised value of $4,500,000 at the time it was listed for sale. The Foundation also holds cash and investments which primarily have been donated by members and alumni of the Fraternity.

The Fraternity and three alumni, Thomas P. Bishop, Kevin S. Kaplan, and E.L. Betz, Jr. (the individual petitioners), filed a "Second Amended Bill of Complaint for Declaratory Judgment, Injunctive Relief, and Petition" against the Foundation and the individual members of its board of trustees (collectively, the Foundation). The Fraternity and the individual petitioners (collectively, the Fraternity) asked the chancellor, among other things, to declare that legal title to the property was held in an express trust by the Foundation for the benefit of the Fraternity, and to place the Foundation's funds in a constructive trust "for the furtherance of the charitable and educational goals of the Fraternity."

The Fraternity also asked the chancellor to declare that the original 1966 articles of incorporation "remain in full force and effect and that all subsequent amendments or restatements of the Articles of Incorporation are null and void" because those amendments and restatements were not ratified by the Foundation's members. The Fraternity asked the chancellor to order a meeting of the Foundation's members pursuant to Code § 13.1-840 for the purpose of electing new directors to the Foundation's board. In response, the Foundation raised various affirmative defenses, including that certain statutes of limitation barred the Fraternity's suit.

In briefs submitted to the chancellor, the Fraternity argued that its bill of complaint was not barred by any statute of limitations because "[t]he Fraternity responded promptly when its property rights . . . were threatened by sale and it discovered, (through due diligence that it previously had no reason to undertake), that its members had voting rights in [the Foundation]."  The Fraternity asserted that the Foundation "did not breach its trust until November 8, 1999, at the earliest," when the Foundation announced its intention to sell the property.  The Fraternity also contended that the 1967 and 1974 amendments were void, rather than "merely voidable," because they were not ratified by the Foundation's members.

Former Code § 13.1-236, in effect when the Board approved the 1967 and 1974 amendments, provided in relevant part:

> Amendments to the articles of incorporation shall be made in the following manner:
>
> (a)  Where there are members having voting rights, the board of directors shall adopt a resolution setting forth the proposed amendment, finding that it is in the best interests of the corporation and directing that it be submitted to a vote at a meeting of members having voting rights, which may be either an annual or a special meeting.  Notice shall be given to each member entitled to vote at such meeting within the time and in the manner provided in this Act for the giving of notice of such meetings of members.  The proposed amendment shall be adopted upon receiving more than two thirds of the votes entitled to be cast by members present or represented by proxy at such meeting.

7

The chancellor heard the evidence ore tenus.  In a letter opinion, the chancellor concluded that under the articles of incorporation, the first two classes of membership, the "Active Chapters" and the "Alumni Chapters," did not exist because they had not been "chartered" by the Board.  However, the chancellor determined that the third class of membership, "Alumni Members," did exist because that class required no other action by the Board to take effect.  The chancellor thus concluded that the Foundation was a "membership corporation whose members consisted of individual alumni members not affiliated with any chartered alumni chapter," and found that the individual petitioners belonged to this third class.

The chancellor determined that the 1967 and 1974 amendments were invalid because after they were approved by the Board, they were not submitted to a vote by the Foundation's members.  The chancellor concluded that the Foundation held the property in an express trust for the benefit of the Fraternity, and imposed a constructive trust on the Foundation's assets for the Fraternity's benefit.  The chancellor further determined that the statute of limitations and other affirmative defenses raised by the Foundation did not bar the Fraternity's claims.

In July 2002, after the chancellor issued his letter opinion, Code § 2.2-507.1 became effective.  That statute provides:

8

The assets of a charitable corporation incorporated in or doing any business in Virginia shall be deemed to be held in trust for the public for such purposes as are established by the donor's intent as expressed in governing documents or by other applicable law.  The Attorney General shall have the same authority to act on behalf of the public with respect to such assets as he has with respect to assets held by unincorporated charitable trusts and other charitable entities, including the authority to seek such judicial relief as may be necessary to protect the public interest in such assets.

Thereafter, the Foundation argued that based on Code § 2.2-507.1, the chancellor lacked jurisdiction to proceed further in the case because the Attorney General had not been joined as a necessary party.

On July 22, 2002, the chancellor entered a final order incorporating his letter opinion and restating his ruling that the 1967 and 1974 amendments were "invalid and of no force and effect."  In the order, the chancellor also enjoined the trustees "from taking any actions with respect to the business and operations" of the Foundation.

In addition, the chancellor vacated the positions of all existing directors and officers of the Foundation.  The chancellor referred the case to a commissioner in chancery to conduct a meeting of the Foundation's membership pursuant to Code § 13.1-840 for the purpose of electing new Board members. The chancellor ordered the commissioner "to supervise the business and operations" of the Foundation until the election of

9

the new Board.  The chancellor also rejected the Foundation's argument that the Attorney General was a necessary party pursuant to Code § 2.2-507.1.  The Foundation appeals.[1]

Initially, the Foundation contests the chancellor's jurisdiction to enter the final decree of July 22, 2002, asserting that once Code § 2.2-507.1 became effective on July 1, 2002, the Attorney General became a necessary party to the suit. We disagree with the Foundation's contention because the statute did not exist when this suit was filed.  In reaching this conclusion, we express no opinion whether the Attorney General is a necessary party in suits of this nature filed after July 1, 2002.

Addressing the merits of the appeal, the Foundation concedes that it did not comply with all requirements in amending its articles of incorporation in 1974.  The Foundation argues that, nevertheless, the Fraternity's challenge to the amendments was barred by the statute of limitations because the Board's action approving the amendments was merely voidable,

---

[1] On August 31, 2002, a meeting was held pursuant to the chancellor's ruling at which 186 alumni members were present and elected a new board of directors.  However, the chancellor invalidated this election because of the lack of a necessary quorum of about 15,800 members, which number represents ten percent of the over 158,000 alumni members of the Foundation's third voting class.  The Fraternity has since filed a petition to dissolve the Foundation, which is presently pending.

10

rather than void.[2]  Thus, the Foundation contends that the statute of limitations for challenging the Board's action began to run in 1974, when the amendments were adopted without approval by the Foundation's members, and that the limitation periods applicable to the Fraternity's claims were, at most, five years.  The Foundation therefore maintains that any claims by the Fraternity expired in 1979, and that the 1974 amendments remain in full force and effect because they were not timely challenged by the Fraternity.

In response, the Fraternity argues that its challenge to the 1974 amendments is not barred by the statute of limitations. The Fraternity asserts that under this Court's ruling in Princess Anne Hills Civic League, Inc. v. Susan Constant Real Estate Trust, 243 Va. 53, 413 S.E.2d 599 (1992), a voidable corporate act becomes null and void unless it is properly ratified.  Thus, the Fraternity contends that the 1974 amendments are null and void because they were never ratified by a vote of the Foundation's members.  We disagree with the Fraternity's arguments.

We first note that the form of the present litigation, which is a declaratory judgment suit, does not affect our analysis of the statute of limitations.  The applicability of

_____

[2] Based on our holdings below, we address only the adoption of the 1974 amendments and need not consider the adoption of the

11

the statute of limitations is governed by the object of the litigation and the substance of the complaint, not the form in which the litigation is filed.  See Board of Supervisors v. Thompson Assocs., 240 Va. 133, 139, 393 S.E.2d 201, 204 (1990); Friedman v. Peoples Serv. Drug Stores, Inc., 208 Va. 700, 703, 160 S.E.2d 563, 565 (1968); see also Johnson v. Davis, 582 F.2d 1316, 1318 (4th Cir. 1978).  "If the law were otherwise, the statute of limitations could be rendered meaningless merely by the filing of a declaratory judgment action."  Thompson Assocs., 240 Va. at 139, 393 S.E.2d at 204.  Therefore, we will not permit a complainant to use the declaratory judgment statute as a vehicle to circumvent the statute of limitations applicable to the substance of a complaint.  See id. at 139, 393 S.E.2d at 204-05.

Next, we observe that the Fraternity's reliance on our holding in Princess Anne Hills Civic League is misplaced. There, the statute of limitations was not asserted as a defense to the challenged corporate act.  We were asked to decide whether a deed purportedly executed by a nonstock corporation was void because it had been executed by the corporation's president without the required approval of the board of directors and the vote of the corporation's members.  243 Va. at 55-57, 413 S.E.2d at 601-02.  We held that because execution of

---

1967 amendments.

12

the deed was within the powers conferred upon the corporation by the General Assembly, but the corporation failed to do properly that which it had the power to do, the corporate action executing the deed was voidable, rather than void. Id. at 61, 413 S.E.2d at 604. In the absence of a statute of limitations defense, we further held that the corporate act was subject to challenge and that the deed was null and void because the corporation had not complied with all statutory requirements. Id. at 62, 413 S.E.2d at 604.

Here, because the Foundation has asserted a defense of the statute of limitations, we must determine whether that defense bars consideration of the Fraternity's challenge to the Foundation's corporate action adopting the 1974 amendments. We begin by reviewing the relevant powers of a nonstock corporation.

Under Code § 13.1-884(A), a nonstock corporation is empowered to "amend its articles of incorporation at any time to add or change a provision that is required or permitted in the articles." A similar provision appeared in former Code § 13.1-235, which was in effect in 1974 when the Board adopted the challenged amendments. Under that section, a corporation was authorized to "amend its articles of incorporation . . . in any and as many respects as may be desired, so long as its articles

13

of incorporation as amended contain only such provisions as are lawful under this Act."  Id.

The 1974 amendments to the Foundation's articles of incorporation reflected changes in the Foundation's statement of purpose and the provisions regarding its membership.  Because these provisions plainly were permitted subjects for amendment under former Code § 13.1-235, the Foundation had the power to make such changes to its articles.

The Foundation did not comply with the statutory requirements necessary for approval of the 1974 amendments. Under former Code § 13.1-236(a), amendment of the Foundation's articles of incorporation required approval of more than two-thirds of all votes entitled to be cast by the members present at an annual or special meeting held in conformance with the other statutory requirements.  However, because adoption of the 1974 amendments was within the Foundation's power conferred by statute, the Board's approval of those amendments was a voidable, rather than a void, act of the corporation.  See Princess Anne Hills Civic League, 243 Va. at 61; 413 S.E.2d at 604; Winston v. Gordon, 115 Va. 899, 905-06, 80 S.E. 756, 759 (1914); see also Michelson v. Duncan, 407 A.2d 211, 218-19 (Del. 1979).

We hold that a challenge to a voidable corporate act is subject to a defense of the statute of limitations.  A contrary

14

conclusion is untenable because it would require us to assume, in the absence of any authority, that the General Assembly intended to render innumerable corporate transactions, imperfectly executed but within a corporation's power to act, subject to attack in perpetuity.  In addition, such a conclusion would blur the bright line presently existing between an ultra vires act, in which a corporation lacks power to act, and a voidable act, which is within the lawful scope of a corporation's power.  See Code § 13.1-828; see also Norton Grocery Co. v. Peoples Nat'l Bank of Abingdon, 151 Va. 195, 202-03, 144 S.E. 501, 502-03 (1928).  Thus, we conclude that the Fraternity's challenge is subject to the statute of limitations, and we will consider the substance of the claim asserted to determine whether it is time-barred.  See Thompson Assocs., 240 Va. at 139, 393 S.E.2d at 204; Friedman, 208 Va. at 703, 160 S.E.2d at 565; see also Johnson, 582 F.2d at 1318.

If we consider the Fraternity's claim challenging the 1974 amendments as alleging breach of a contract between the Fraternity and the Foundation, or breach of a contract between the Foundation and the individual petitioners, either claim is barred by the five-year limitation period of former Code § 8-13, because the alleged injury occurred in 1974 and the present suit

15

was filed in 2001.[3]  "It is a well-established principle uniformly acted upon by courts of equity, that in respect to the statute of limitations equity follows the law; and if a legal demand be asserted in equity which at law is barred by statute, it is equally barred in equity."  Belcher v. Kirkwood, 238 Va. 430, 433, 383 S.E.2d 729, 731 (1989)(quoting Sanford v. Sims, 192 Va. 644, 649, 66 S.E.2d 495, 498 (1951)).

Alternatively, if we view the Fraternity's challenge to the 1974 amendments as alleging that the Foundation's directors breached a fiduciary duty owed to Kappa Sigma Fraternity and to the individual petitioners as corporate members, both those claims likewise are time-barred by the five-year "catch-all" provision of former Code § 8-24.[4]  See Singer v. Dungan, 45 F.3d 823, 827 (4th Cir. 1995); Federal Deposit Ins. Corp. v. Cocke, 7 F.3d 396, 401-02 (4th Cir. 1993).  Accordingly, we hold that the Fraternity's claims attacking the validity of the 1974 amendments are barred by the statute of limitations, and that the chancellor erred in reaching a contrary conclusion.[5]

---

[3] We do not express an opinion concerning the legal sufficiency of such a contract claim.

[4] We express no opinion regarding the legal sufficiency of such a claim of breach of fiduciary duty.  We also observe that the present version of the "catch-all" provision found in Code § 8.01-248 fixes a two-year statute of limitations.

[5] We disagree with the Foundation's suggestion that the claim of the individual petitioners also could be viewed as alleging injury to a property right, based on the denial of the petitioners' right to vote set forth in the Foundation's

16

We next consider the Foundation's argument that the Fraternity's assertion of an express trust, and its accompanying request that a constructive trust be imposed on the Foundation's funds, also are time-barred. The Foundation contends that the limitation period for a claim involving an express trust is five years, whether the claim is based on an injury to property or on the breach of a written contract. The Foundation thus argues that the limitation period on the express trust claim began to run in 1974 because the 1974 amendments were an open and express repudiation of the alleged trust. The Foundation further contends that the Fraternity's request that a constructive trust be imposed on the Foundation's funds likewise is barred by the five-year statute of limitations, because any claim to the Foundation's funds accrued when the Foundation transferred its assets to a charitable corporation exempt from federal taxation for the benefit of the public.

In response, the Fraternity argues that it timely asserted its claim of an express trust and request for a constructive trust. The Fraternity asserts that it was the beneficial owner of the property before and after the 1974 amendments went into effect and that those amendments, which merely changed the Foundation's tax status, did not constitute a repudiation of the

articles of incorporation. Members of a nonstock corporation do not have vested property rights based on any provision in the

17

express trust.  The Fraternity contends that the Foundation's "fraud" in attempting to enact the 1974 amendments precludes the Foundation from asserting the statute of limitations as a defense.  The Fraternity further contends that its request for a constructive trust was not time-barred because the Foundation's failure to use the donated funds for their intended purpose represented a continuing violation of the Foundation's obligation to its donors.  We disagree with the Fraternity's arguments.

The 1974 amendments, which remain in full force and effect, committed the Foundation's assets for the benefit of the public. J. Robert Mahoney, who then was Secretary-Treasurer of the Foundation and Executive Director of the Fraternity, acknowledged the effect of this change in the Foundation's status and purpose in a written statement he made in 1974 to the Director of the United States Internal Revenue Service.  Mahoney stated that the new charitable foundation "will not serve any private benefit of or for Kappa Sigma Fraternity. . . .  All alumni contributions to [the Foundation] will be used only for public charitable purposes and not for the private use of Kappa Sigma Fraternity."

We hold that this declaration of fundamental change in the Foundation's status and purpose constituted a repudiation of any

corporation's articles.  Code § 13.1-884(B).

express trust maintained by the Foundation for the benefit of the Fraternity. The statute of limitations begins to run on a claim of express trust when the trustee denies or repudiates the trust and the trust beneficiary has actual or constructive notice of this denial or repudiation. Russell v. Passmore, 127 Va. 475, 511, 103 S.E. 652, 664 (1920); see Wiglesworth v. Taylor, 239 Va. 603, 608, 391 S.E.2d 299, 303 (1990); Broaddus v. Gresham, 181 Va. 725, 734, 26 S.E.2d 33, 36 (1943). Because such action by the trustee is an abandonment of the existing fiduciary character of the trustee's relationship to the trust property, the statute begins to run based on the trustee's action and notice, unless the trustee has committed a fraud with regard to the giving of notice. Russell, 127 Va. at 511; 103 S.E. at 664.

In the present case, the chancellor did not find that the Foundation was guilty of any fraudulent conduct regarding notice to the Fraternity of the Foundation's change in purpose and repudiation of its former status holding property for the benefit of the Fraternity. As Mahoney's statement indicates, the Fraternity had notice of the proposed change in the Foundation's status and the Foundation's effective repudiation of any alleged trust relationship for the benefit of the Fraternity. Therefore, any claim of express trust against the Foundation began to run in 1974, when the repudiation occurred.

19

Accordingly, whether the express trust claim brought by the Fraternity is construed as being based on breach of contract, on injury to property, or on breach of fiduciary duty, the Fraternity's claim was time-barred when this suit was filed in 2001.  See former Code §§ 8-13 and -24.[6]

We also hold that the chancellor erred in imposing a constructive trust on the Foundation's assets.  Because the Fraternity's challenge to the 1974 amendments and its claim of an express trust were time-barred, the 1974 amendments remain in full force and effect and the chancellor lacked any basis for imposing a constructive trust on these assets.[7]

The Foundation next argues that the chancellor did not have authority to vacate the positions of its directors and corporate officers.  The Foundation also asserts that the chancellor erred in appointing a commissioner in chancery to manage the Foundation's assets and operations because Code § 13.1-910, which sets forth a court's authority to place a corporation in receivership, applies only in a proceeding to dissolve the corporation.

---

[6] The present versions of these statutes are found in Code §§ 8.01-243, -246, and -248.

[7] Because the Fraternity's challenges to the 1974 amendments are time-barred, its challenges to the 1967 amendments, which are substantively the same as the challenges to the later amendments, necessarily are time-barred as well.

20

In response, the Fraternity asserts that the chancellor's actions were proper under Code § 13.1-840(B), which authorizes a court to enter "orders necessary to accomplish the purpose or purposes of the [court-ordered] meeting."  According to the Fraternity, this provision empowered the chancellor to vacate the positions of the Foundation's officers and directors and to appoint a commissioner in chancery to conduct the meeting and to supervise the Foundation's affairs.  We disagree with the Fraternity's arguments.

The language of Code § 13.1-840 specifies the authority of a circuit court to order an annual or special meeting of a nonstock corporation.  This authority includes calling the meeting, fixing its time and place, prescribing the form and content of the meeting notice, and specifying a record date for determining which members are entitled to notice of the meeting and to vote.  Id.  Because the additional statutory language, authorizing the court to "enter other orders necessary to accomplish the purpose or purposes of the meeting," is general in its terms, we consider that language pursuant to the doctrine of ejusdem generis.

Under this doctrine, when items with a specific meaning are listed together in a statute, and are followed by words of general import, the general words will not be construed to include matters within their broadest scope but only those

21

matters of the same import as that of the specific items listed. Turner v. Reed, 258 Va. 406, 410, 518 S.E.2d 832, 834 (1999); Wood v. Henry County Pub. Schs., 255 Va. 85, 94, 495 S.E.2d 255, 260 (1998). Therefore, we hold that the general language quoted above refers to matters of procedure related to organizing and conducting a court-ordered meeting and did not empower the chancellor to assume the role of the corporate members and take action removing the Foundation's officers and directors from their official positions.

We further observe that under Code § 13.1-857(E), a director continues to serve "until his successor is elected and qualifies or until there is a decrease in the number of directors." Because neither of these events had occurred when the chancellor entered the challenged order, his decision vacating the terms of the Board members was erroneous for this additional reason.

We also conclude that the chancellor erred in appointing a commissioner in chancery to take control of the Foundation's operations and assets. Under Code § 13.1-910(A), a court's authority to appoint a receiver to conduct the business of a corporation is limited to a "judicial proceeding brought to dissolve a corporation." See Commonwealth v. JOCO Found., 263 Va. 151, 162, 558 S.E.2d 280, 285 (2002). Because the Fraternity did not seek a dissolution of the Foundation in these

22

proceedings, the appointment of a commissioner to serve the function of a receiver, as well as the commissioner's actions pursuant to that appointment, must be vacated.[8]  See id.

For these reasons, we will reverse the circuit court's judgment, vacate the court's appointment of a commissioner in chancery to serve the function of a receiver and the commissioner's actions taken pursuant to that appointment, and enter final judgment in favor of the Foundation.

Reversed,
vacated in part,
and final judgment.

---

[8] Based on our several holdings in this case, we need not address the Foundation's arguments relating to estoppel and waiver.