## CIRCUIT COURT OF FAIRFAX COUNTY

Frank E. Williams, Jr., et al.

v.

Jean A. Kinser

February 24, 2004

Case No. (Chancery) 165421

BY JUDGE JONATHAN C. THACHER

This matter came on for a review of Complainant's Motion to Strike the Respondent's Defense of Set-off on February 6, 2004. After considering counsels' arguments and reviewing the applicable law, the Court reaches the findings and conclusions stated below.

### I. *Background*

This suit arises out of the business dealings of Prime Contractors, Inc. ("Prime") and six individuals, who were the owners of Prime in the 1980s. Prime entered into a loan agreement with Prince George's County, Maryland, on December 24, 1985, for the purchase of real property and start up capital (the "Prime Loan"). All six individuals signed as guarantors of the Prime Loan, which was subsequently assigned to NS&T Bank which later became Crestar Bank, N.A. ("Crestar"). On or about October 1, 1990, Prime defaulted on the Prime Loan and later received bankruptcy protection.

Crestar pursued the guarantors in order to recover the defaulted Prime Loan. All of the guarantors of the Prime Loan entered into an Amended Settlement Agreement (the "Settlement Agreement") on January 16, 1992, whereby the guarantors agreed that they would jointly and severally pay a share of the outstanding balance respective to their interest in Prime: 39.5%

for the Complainant Williams, 39.5% for the Respondent Kinsers, and 21% for the Hoffmans. It was anticipated that the six guarantors would be able to sell the property and pay off the Settlement Agreement with the proceeds. When the sale of the property failed to occur, Crestar obtained a Consent Judgment Order against the guarantors in the U.S. District Court for the District of Maryland (the "Judgment").

On May 1, 1995, Crestar assigned the Judgment on the Prime Loan and Settlement Agreement to Norman G. Cohen, Inc. ("NGCI"), a Florida Corporation, in exchange for $825,000.00. At the same time, it is alleged that Crestar also assigned another note which was made payable by the Respondent Kinser to Continental Federal Savings and Loan (the "Continental Note"), which also later became Crestar, to NGCI. The origin of the Continental Note is not clear, but it appears that the Complainants and the Hoffmans agreed to sign as guarantors of that note as well. The property finally sold in November of 1995 and the guarantors used the proceeds of the sale to pay off the Judgment on the Prime Loan. However, NGCI claimed that there was still a deficiency in the amount of $500,000.00 (allegedly due to NGCI adding the separate Continental Note). The Complainant Williams eventually settled with NGCI on March 25, 1999, for $250,000.00 in exchange for releasing all of the Prime guarantors (the "NGCI Settlement"). Complainant Williams, however, allegedly paid all of the $250,000.00 associated with the NGCI Settlement.

## II. *Procedural History*

On March 6, 2000, the Complainant's filed their Bill of Complaint seeking contribution from Respondent Kinser of 39.5% of the $250,000.00, or $98,750.00, for the NGCI Settlement. Complainant's theories of recovery are based on Breach of Contract (count I); Common Law Contribution (count II); or Indemnification (count III).

Respondent Kinser, however, alleges that, beginning in 1991, she advanced Prime at least $200,000.00 in an effort to help finance the completion of Prime's project. Respondent alleges that this $200,000.00 was in addition to the Respondent's 38.5% and, therefore, she should get credit for it. Respondent seeks a set-off as one of her defenses. Respondent also brought a Cross-Bill seeking affirmative relief from the Complainants regarding the $200,000.00 the Respondent allegedly contributed. Respondent's theories of recovery under her Cross-Bill were based on contribution for funds the Respondent allegedly loaned to Prime to pay off a separate NationsBank Loan (count I), Breach of a Guarantee Agreement where the Respondent paid off a debt to Shelter Systems, a subcontractor of

Prime of which both the Complainant and the Respondent signed as guarantor (count II), and Common Law Contribution, which is also based on the Shelter System debt (count III).

Complainants filed a Plea in Bar to all three affirmative counts claimed by the Respondent in her Cross-Bill. The Plea in Bar was to be heard on December 12, 2003. The Complainants' Plea in Bar was based on their claim that all the Respondent's claims were barred by the statute of frauds and that the claims were time-barred by the statute of limitations. The Respondent's Counsel did not oppose the Complainants' Plea in Bar and stated in his pleading that "upon researching the matter, Respondent's Counsel determined that they could not in good faith oppose the Plea in Bar in that there appeared to be an insufficient legal basis upon which an opposition could be based." Respondent's Memorandum in Support of Nonsuit at p. 1. Respondent instead pursued a nonsuit of all affirmative counts in her Cross-Bill. The Respondent's Cross-Bill was nonsuited on January 9, 2004.

However, the Respondent still seeks to utilize the defense of set-off based on her earlier dealings associated with Prime, but unrelated to the Prime Loan, the Settlement Agreement, or the Judgment. This set-off defense is based on the same theories of recovery that made up the affirmative counts of the Respondent's Cross-Bill which have been nonsuited. The Complainants, however, seek to strike the set-off defense because any recovery the Respondent would hope to see would still be barred. The Respondent counters by noting that only the affirmative relief sought in the Cross-Bill has been nonsuited and the affirmative defense have survived and are not barred.

### III. *Analysis*

Respondent seeks to utilize the defense of set-off for the money she allegedly loaned to Prime to help stave off Prime's default of the 1990 NationsBank Loan. Additionally, the Respondent wishes to utilize a set-off for the money she paid to satisfy the Shuttle System debt on June 10, 1993, which extinguished the guarantees associated with the Shuttle System contract. It has been alleged by the Complainants, and conceded by the Respondent, that, if the Respondent were to pursue compensation for these transactions in the form of affirmative relief, either in a separate action or as a counterclaim, her claims would be barred. And the Court agrees with the Respondent in that the Nonsuit of the Respondent's Cross-bill has no impact on her affirmative defense of set-off. However, the Court must still decide whether the Respondent is entitled to benefit from these same transactions in the form of the affirmative defense of set-off.

## A. Recoupment/Set-off Distinction

Recoupment is defined as "[a] right of the defendant to have a deduction from the amount of the plaintiff's damages, for the reason that the plaintiff has not complied with the cross-obligation or independent covenants *arising under the same contract.*" *Black's Law Dictionary* 1439 (4th ed. 1968) (emphasis added). Set-off on the other hand is "[a] counter demand which defendant holds against the plaintiff, *arising out of a transaction extrinsic of plaintiff's cause of action.*" *Black's Law Dictionary* 1538 (4th ed. 1968) (emphasis added).

Over the years, recoupment has evolved as the legislature codified it to give defendants a statutory defensive remedy. The early recoupment statutes specifically allowed for "relief in equity, in whole or in part, against the obligation of the contract. . . ." Former Va. Code § 6145. This was to be read together with former Va. Code § 6149, which specifically permitted "the defendant's claim shall be open to the same grounds of defense to which it would have been open in any action brought by him thereon." This allowed a plaintiff to attack a defendant's plea of statutory recoupment with defenses such as the statute of limitations. However, the Virginia Legislature recodified the recoupment statutes and notably deleted the language that allows a plaintiff to attack the statutory plea of recoupment with the same defenses as would be permitted in other actions.

> In any action on a contract, the defendant may file a pleading, alleging any matter which would entitle him to relief in equity, in whole or in part, against the obligation of the contract; or, if the contract be by deed, alleging any such matter arising under the contract, existing before its execution, or any such mistake therein, or in the execution thereof, or any such other matter as would entitle him to such relief in equity; and in either case alleging the amount to which he is entitled by reason of the matters contained in the pleading. If the amount claimed by the defendant exceeds the amount of the plaintiff's claim, the court may, in a proper case, give judgment in favor of the defendant for such excess.

Va. Code § 8.01-422. With this background, the Supreme Court of Virginia held that "a plea of recoupment under Code § 8.01-422 is not subject to a statute of limitations defense." *Cummings v. Fulghum*, 261 Va. 73, 80, 540 S.E.2d 494, 498 (2001).

Set-off, on the under hand, does not share a similar evolution as recoupment. By definition, a set-off must be "arising out of a transaction extrinsic of plaintiff's cause of action." *Black's Law Dictionary* 1538 (4th ed. 1968); see also *Dexter-Portland Cement Co. v. Acme Supply Co.*, 147 Va. 758, 766, 147 Va. 758, 133 S.E. 788, 790 (1926) (Set-off "arises out of some transaction *dehors* the transaction sued on."). Because "set-off" must involve separate transactions, it was not affected by the Legislature's recodification of the recoupment statute, which applies to actions arising from the same contract. Therefore, the reasoning as to why a statutory plea of recoupment is not subject to a statute of limitations defense does not also apply to a set-off defense. There is no reason why the defense of set-off should also enjoy the same protections from attack as statutory recoupment. To do so would allow a party to bypass the statute of limitations and revive a claim on an old contract merely by coloring it as a defensive pleading rather than an affirmative one.

## B. *Statute of Limitations*

Applying this to the case at bar, it appears that the Respondent is attempting to bypass the statute of limitation by coloring her claims relating to the older and separate transactions as a defensive pleading rather than affirmative claims. The Plaintiff, however, is not prevented from attacking these claims with defenses such as the statute of limitations. And even though this suit has been brought on the Chancery side of the Court, the Court will still apply the statute of limitation when appropriate, as "it is a well-established principle uniformly acted upon by courts of equity, that in respect to the statute of limitations equity follows the law; and if a legal demand be asserted in equity which at law is barred by statute, it is equally barred in equity." *Kappa Sigma Frat., Inc. v. Kappa Sigma Fraternity*, 266 Va. 455, 467, 587 S.E.2d 701, 708 (2003) (quoting *Belcher v. Kirkwood*, 238 Va. 430, 433, 383 S.E.2d 729, 731 (1989)).

### 1. *NationsBank Loan*

In 1991, the Respondent allegedly advanced money to Prime to help stave off Prime's default of the 1990 NationsBank Loan. Respondent also alleges that the Complainants agreed to indemnify the respondent for any money that she advanced to Prime. This alleged agreement was not memorialized by any writing and, at best, could only be construed as an oral agreement or an unwritten contract. As such, to recover under this agreement, the Respondent would have to file her action within three-years after the accrual

of the cause of action. Va. Code § 8.01-246(4). Further, the basis for the Respondent's theory of recovery on this unwritten contract associated with the NationsBank Loan is for contribution from the Complainants. "The cause of action in the actions herein listed shall be deemed to accrue as follows ... in actions for contribution or for indemnification, when the contributee or the indemnitee has paid or discharged the obligation." Va. Code § 8.01-249(4).

With this background, it is clear that the statute of limitations would begin to run when the Respondent paid or discharged the obligation that Prime owed to NationsBank. The Respondent has alleged that she began to pay NationsBank over $200,000.00 in 1991. Therefore, the statute of limitations would begin to accrue on that transaction in 1991, and any recovery for those funds would be time-barred as of 1994. To the extent that the Respondent may have paid this money to NationsBank over a period of years, her pleadings state that the period of years would have been between 1991 and 1996. Therefore, even giving the Respondent the benefit of this enlarged period of time for which the statute of limitations could begin to accrue, the Respondent's right to recover funds associated with the NationsBank Loan would still be time-barred, at the latest, in 1999. The Respondent's right to recover funds paid to NationsBank became time-barred prior to the Complainants' filing their Bill of Complaint on March 3, 2000, and she shall not be entitled to a set-off under these circumstances.

## 2. *Shelter Systems Debt*

The Respondent wishes to utilize a set-off for the money she paid to satisfy the Shelter Systems debt on June 10, 1993. The original debt owed to Shelter Systems stems from a contract between Prime and Shelter Systems dated December 4, 1991. Both the Complainants and the Respondent signed as guarantors of this Shuttle Systems Contract on December 12, 1991. This meant that each would be liable on the Shuttle Systems Contract if Prime fell into default. The June 10, 1993, contract entered into between the Respondent and Shelter Systems effectively extinguished the guarantees' agreement to cover Prime's debt on the Shelter Systems loan. The Respondent, however, would be entitled to contribution from the Complainants for the funds she used to satisfy the Shelter Systems debt.

However, the Respondent's theory of recovery, which is contribution based on the Guarantee Agreement signed by the Complainants, is still subject to the statute of limitations. The Shelter Systems Loan and the subsequent Guarantee Agreement regarding the Shelter Systems debt are all

evidenced by writings and are effectively written contracts. If Virginia law were to apply to these contracts, to recovery under these agreements, the Respondent would have to file her action within five years after the accrual of the cause of action. Va. Code § 8.01-246(2). However, the Guarantee Agreement, which the Respondent wishes to enforce, was not only entered into in the State of Maryland, it also includes a choice of law provision stating that the "agreement shall be interpreted in accordance with and construed under the laws of the State of Maryland." See Respondent's Cross-bill, Exhibit A. The Virginia Code states that "no action shall be maintained on any contract which is governed by the law of another state or country if the right of action thereon is barred either by the laws of such state or country or of this Commonwealth." Va. Code § 8.01-247. Virginia will apply the shorter of the two states' limitations periods. The Maryland Code states "[a] civil action at law shall be filed *within three years from the date it accrues* unless another provision of the Code provides a different period of time within which an action shall be commenced." Md. Code Ann. § 5-101 (emphasis added). Therefore, Maryland's three-year limitation period shall apply to any recovery under this contract.

On June 10, 1993, the Respondent paid off the obligation to Shelter Systems. The time for which she could file a claim to recover under the Guarantee Agreement began to accrue on this date. Under Maryland's three-year statute of limitations, any claim the Respondent could hope to make under the Guarantee Agreement between the Complainant and Shelter Systems became time-barred on June 10, 1996, well before the Bill of Complainant was filed in this suit. Therefore, the Respondent shall not be entitled to a set-off for funds the Respondent paid to satisfy the Shelter Systems Loan.

## C. *Statute of Frauds*

Even if the Respondent were able to establish that her defense of set-off was not barred by the statute of limitations, the NationsBank Loan transaction would still be barred by the statute of frauds.

As indicated above, the Respondent allegedly advanced money to Prime to help stave off default on the 1990 NationsBank Loan. It is also alleged that the Complainants agreed to indemnify the Respondent if Prime was unable to repay the Respondent for the funds she advance to Prime. This agreement, however, was never memorialized by any writing. The applicable statute of frauds provision states that:

Unless a promise, contract, agreement, representation, assurance, or

ratification, or some memorandum or note thereof, is in writing and signed by the party to be charged or his agent, no action shall be brought in any of the following cases ... to charge any person upon a promise to answer for the debt, default, or misdoings of another.

Virginia Code § 11-2(4). Here, it is alleged that the Complainant promised to answer for the debt of Prime if Prime defaulted on the NationsBank Loan. Therefore, this agreement does fall under the statute of frauds and must be in writing. Because this agreement is not in writing, it is barred by the statute of frauds and the Respondent will not be permitted a set-off for the NationsBank transaction.

## IV. *Conclusion*

The Respondent shall not be permitted to use the defense of set-off with regard to the NationsBank or the Shelter Systems transactions. Complainants' Motion to Strike the Respondent's Set-off defense is granted.