# CIRCUIT COURT OF THE CITY OF RICHMOND

Calcium Chloride Sales, Inc.

v.

Virginia Department of Taxation

June 29, 2006

Case No. LT-2270

BY JUDGE T. J. MARKOW

The parties appeared before the court and were heard on June 19, 2006, on Petitioner's Application for Correction of Erroneous Assessment of Sales and Use Taxes.

Petitioner, Calcium Chloride Sales, Inc., seeks correction of an alleged erroneous assessment of use taxes assessed for the period November 1, 1996, through December 31, 2002, in the amount of $321,241.26. Petitioner, Calcium Chloride Sales, is a calcium chloride supplier who also delivers calcium chloride for other suppliers. Respondent, the Department of Taxation, assessed use taxes against Calcium Chloride Sales for certain transactions with the Virginia Department of Transportation. In the first type of transaction at issue, Calcium Chloride Sales sold calcium chloride to the Virginia Department of Transportation and delivered the calcium chloride by depositing it onto specified roadways. In the second type of transaction at issue, the Virginia Department of Transportation purchased the calcium chloride through third party vendors who then sub-contracted Calcium Chloride Sales to deliver the calcium chloride by depositing it onto specified roadways.

Calcium Chloride Sales timely appealed the assessment to the Commissioner of Taxation, who, by letter dated October 8, 2004, issued a determination denying the relief sought. Calcium Chloride Sales now appeals

to this court pursuant to Va. Code § 58.1-1825 requesting a determination that the assessment of the use taxes are erroneous and to enter an order directing the Commissioner to correct the erroneous assessment exonerating Calcium Chloride Sales from payment.

The Department of Taxation relies on Va. Code § 58.1-610(A) to support its assessment of use taxes with regards to the transactions where Calcium Chloride Sales sold calcium chloride to the Virginia Department of Transportation and deposited it onto specified roadways. The Department of Taxation relies on Va. Code § 58.1-610(B) to support its assessment of use taxes on the transactions where Calcium Chloride Sales was sub-contracted by third parties to deliver and deposit the calcium chloride onto the roadways pursuant to the third parties' contract with the Virginia Department of Transportation.

Calcium Chloride Sales argues that the assessments are erroneous because the Virginia Department of Transportation is the ultimate consumer and the true object of the transaction is the sale of the calcium chloride to an exempt entity, the Virginia Department of Transportation. Calcium Chloride Sales further argues that its deposit of calcium chloride onto the roadways is a mere delivery and is no different than its delivery of the calcium chloride to a tank for which no tax has been assessed. In support of this argument, Calcium Chloride Sales states that the deposit of calcium chloride onto the roadways involves less labor and cost than depositing the calcium chloride in a tank.

*Direct Sale Contracts*

The Department of taxation imposed a use tax on the first type of transactions based on the following provision:

> Any person who contracts orally, in writing, or by purchase order to perform construction, reconstruction, installation, repair, or *any other service with respect to real estate* or fixtures thereon, and in connection therewith to furnish tangible personal property, shall be deemed to have purchased such tangible personal property for use or consumption.

Va. Code § 58.1-610(A) (2006) (emphasis added).

The Department of Taxation relies on the language "any other service with respect to real estate" to support its assessment of use taxes on the acts performed by Calcium Chloride Sales. It argues that, pursuant to the statute, Calcium Chloride Sales is the consumer of the tangible personal property

because it provides the service of applying calcium chloride to the roadway (i.e. real estate).

Under the doctrine of *ejusdem generis* "when items with a specific meaning are listed together in a statute and are followed by words of general import, the general words will not be construed to include matters within their broadest scope but only those matters of the same import as that of the specific items listed." *Kappa Sigma Fraternity, Inc. v. Kappa Sigma Fraternity*, 266 Va. 455, 470, 587 S.E.2d 701, 710 (2003). Based on this doctrine, the court is of the opinion that Va. Code § 58.1-610(A) does not apply to the transactions at issue. The service of delivering the calcium chloride and depositing it onto the roadway are not akin to construction, reconstruction, or the installation of tangible property. "Any other service with respect to real estate" cannot be given the broadest interpretation, but must be construed to have a similar meaning as the list provided by the legislature. Accordingly, the court finds that Va. Code § 58.1-610(A) does not apply to the depositing of calcium chloride onto state roads.

### Third-Party Contracts

The Department of taxation imposed a use tax on the second type of transactions based on the following provision:

> Any person who contracts to perform services in this Commonwealth and is furnished tangible personal property *for use* under the contract by the person, or his agent or representative, for whom the contract is performed, and a sales or use tax has not been paid to this Commonwealth by the person supplying the tangible personal property, shall be deemed to be the consumer of the tangible personal property so used, and shall pay a use tax based on the fair market value of the tangible personal property so used, irrespective of whether or not any right, title, or interest in the tangible personal property becomes vested in the contractor.

Va. Code § 58.1-610(B) (2006) (emphasis added).

In these transactions, Calcium Chloride Sales contracted with third parties, not the Virginia Department of Transportation, to provide delivery services and to deposit the calcium chloride onto the roadway. The third parties had the contract with the Virginia Department of Transportation to

furnish and apply the calcium chloride. Calcium Chloride Sales was the subcontractor that delivered the product.

The court notes that the true object test proposed by Calcium Chloride Sales is not applicable to this type of transaction. This is not a combination of a sale and a service as far as Calcium Chloride Sales is involved. In these transactions, Calcium Chloride did not purchase or sell calcium chloride. They were merely contracted by the third party to deliver the calcium chloride. The Virginia Department of Transportation was the purchaser of the calcium chloride.

The statute that imposes the use tax states:

> There is hereby levied and imposed . . . a tax upon the *use or consumption* of tangible personal property in this Commonwealth, or the storage of such property outside the Commonwealth for use or consumption in this Commonwealth.

Va. Code § 58.1-604 (emphasis added).

The court is of the opinion that the legislature did not intend for Va. Code § 58.1-604 to apply to this type of transaction. It then follows that Va. Code § 58.1-610(B) is also inapplicable.

Calcium Chloride Sales did not purchase, sell, use, or consume the calcium chloride. It was merely a deliverer of the calcium chloride, which was purchased by the Virginia Department of Transportation. The process of depositing the calcium chloride onto the roadway was a means of delivery. Calcium Chloride Sales merely delivered the property to the specified location by releasing it from the truck. The release of the calcium chloride required no additional labor or manipulation and therefore does not constitute a "use" or "consumption" of the property.

For the foregoing reasons, the court finds that the Department's assessment of the use taxes is erroneous; it is, therefore, ordered that the decision of the Virginia Department of Taxation is reversed. The case is remanded to the Department for correction of the erroneous assessment and any further action consistent with this opinion.