COURT OF APPEALS OF VIRGINIA

PUBLISHED

Present:   Judges Beales, O'Brien and Athey
Argued at Fredericksburg, Virginia


DAVID WILLEMS, ET AL.

                                                        OPINION BY
v.        Record No. 0754-22-4              JUDGE CLIFFORD L. ATHEY, JR.
                                                      AUGUST 8, 2023
JAMES BATCHELLER, ET AL.


FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
David Bernhard, Judge

John C. Altmiller (Leonard C. Tengco; Linh H. Ly; Pesner Altmiller
Melnick DeMers & Steele PLC, on briefs), for appellants.

Michael J. Kalish (Walsh, Colucci, Lubeley & Walsh, P.C., on brief),
for appellees.


David Willems and Petra Willems, (collectively "the appellants") sued James Batcheller

and Christine Bartoletta (collectively "the appellees") for trespass and nuisance in the Circuit

Court for Fairfax County ("circuit court").  The circuit court found for the appellants in part and

the appellees in part.  On appeal, the appellants assign error to the circuit court: (1) declaring a

new boundary line when the appellees never requested the relief granted, and (2) holding that the

appellees adversely possessed the area directly under the eave of the appellants' shed which

encroached over the boundary declared by the circuit court.  The appellees raise cross-error by

assigning error to the circuit court: (1) basing its ruling on facts not proven at trial related to the

bamboo spreading from the appellees' property onto the appellants' property, (2) failing to

properly apply the test articulated in *Fancher v. Fagella*, 274 Va. 549 (2007), (3) failing to hold

that the appellants' exclusive remedy to combat the proliferation of bamboo on their property

was self-help, (4) failing to hold that the appellants' complaint was barred by the statute of

limitations pursuant to Code § 8.01-243, (5) ruling that Code § 8.01-230 entirely negates the statute of limitations applicable pursuant to Code § 8.01-243 since only equitable relief was sought by the appellants, and (6) holding that the doctrine of laches did not preclude the adjudication of the appellants' complaint. We affirm the circuit court in part, and reverse and remand in part.

## I. BACKGROUND

### A. *General Background and Pleadings*

In 2002, the appellees purchased their home located at 6805 Valley Brook Drive ("appellees' property"). The appellees' property is located adjacent to 3503 Thomas Court, which at that time was owned by Ahmet and Eileen Erbenghi. In 2003, the appellees constructed a fence between their yard and the Erbenghis' (now appellants') property. The fence has not been moved since its initial construction. The appellants purchased 3503 Thomas Court ("appellants' property") from the Erbenghis in 2015 and repaired the roof of a utility shed located on their property adjacent to the fence. The eave of the reconstructed roof of the shed overhangs the fence.

Following various disagreements between them, on May 12, 2020, the appellants filed the instant complaint in the circuit court, alleging (among other things) that the appellees: (1) "currently maintain a fence . . . that encroaches upon the [appellants' p]roperty[,]"and (2) "have planted bamboo in the rear of the [appellees' p]roperty[,]" which "has travelled from the [appellees' p]roperty and has invaded the [appellants' p]roperty." Based thereon, the appellants sought to enjoin the appellees from trespassing based upon the appellees' fence being located on the appellants' property "without permission or authorization." They also requested that the circuit court "enter an order compelling [the appellees] to remove the [f]ence f[ro]m the [appellants' p]roperty."

The appellants also alleged a second count for trespass based upon the appellees' "planting of bamboo near the boundary of the [appellants' p]roperty [which] has directly resulted in the invasion and encroachment of bamboo onto the [appellants' p]roperty," which "is without authority or permission," "constitut[ing] an unauthorized entry onto the [appellants' p]roperty." To address this alleged trespass, the appellants prayed for the circuit court to "enter an order compelling [the appellees] to cease and prevent all encroachment and invasion on the [appellants' p]roperty from the bamboo planted on the [appellees' p]roperty." The appellants also pled that the appellees had created a nuisance based on the encroachments on their property by the bamboo and requested the same relief they sought for the alleged trespass.

On August 7, 2020, the appellees filed an "Answer and Grounds of Defense" ("Answer") which included a section entitled "Affirmative Defense" in which the appellees listed, with no facts or explanation, (1) "Adverse Possession," (2) "Statute of Limitations," and (3) "Laches." The only direct response to the allegation that the appellees were maintaining a fence on the appellants' property was that the allegation in paragraph 7 of the complaint was "[d]enied as phrased. The [appellees] established a boundary line via maintenance of a fence between the two lots owned by the parties." In response to the appellants' allegation that the appellees' "maintenance of the [f]ence on the [appellants' p]roperty is without permission or authorization," the appellees' Answer states: "Admitted that [the appellees] have maintained a fence on a portion of the lot that has the address 3503 Thomas Court for greater than 15 years." As to the allegation that they planted the bamboo, the appellees' Answer states: "Denied as phrased—[the appellees] are not the originators of bamboo." They also answered that they were not "responsible for planting or spread of any bamboo on [the appellants'] property."

At trial, Ms. Willems testified that bamboo continually spread from the appellees' yard to her yard, requiring her to cut bamboo shoots encroaching on her shed sprouting from rhizomes originating on the appellees' side of the fence. She further testified that in some areas of her yard, she was forced to install barriers to keep the bamboo from spreading into her yard, but that she was unable to install a barrier between her shed and the fence. Further, the bamboo grew around the edges of the installed barriers. When asked if the bamboo located on the appellees' property damaged her shed, she responded that: "It's more than touching it, it's[—]you know, it's bending over in the wind. And[—]and especially when snow loads showed it lately very severely. Their shingles[—]you can see here (indicating) the shingles. This (indicating) is the edge of the eave and the shingles had been scratched away." She testified that constant effort is required to keep the bamboo spreading from the appellees' property onto their property, from growing around their shed. There was a confusing exchange on cross-examination in which Ms. Willems might have agreed that bamboo growing elsewhere on her property spreads to other adjoining properties.

Mr. Batcheller testified that when they purchased their home in 2002, there was already bamboo on the property. He further acknowledged that no bamboo was growing in the area near the appellants' shed in 2002 but that in 2005 he transplanted bamboo from another part of his property to that area to create a privacy screen between his yard and the neighbors.

On several occasions throughout the trial, the appellants' counsel objected to evidence and argument concerning adverse possession. Counsel for the appellants contended that adverse possession, which was pled only as an affirmative defense here, was not before the court because it had not been properly pled as a cross-claim requiring a response. The appellants' counsel further contended that since adverse possession had not been pled as a cross-claim and the

appellants had not received notice of the nature of the claim and relief sought, he had not introduced any evidence rebutting the affirmative defense.

The appellees filed a post-trial brief specifically addressing whether the bamboo constituted a nuisance, arguing that there was insufficient evidence of their bamboo causing any harm to the appellants' property. They further argued that since the appellants did not prevent the bamboo growing elsewhere on their own property from spreading to other adjacent properties, equity could afford them no remedy for the alleged nuisance because, "'[h]e who seeks equity must do equity.' *Puckett v. Jessee*, 195 Va. 919, 930 (1954)."

*C. Opinions and Post-Trial Arguments*

The circuit court rendered its judgment by letter opinion dated March 6, 2022. The circuit court framed the issues for resolution as follows: (1) whether the bamboo is a nuisance; (2) whether the bamboo is trespassory; (3) whether the appellants' claims are barred by the statute of limitations; (4) whether, in the alternative, the defense of laches applies here to both the trespass and nuisance claims; (5) whether the existing fence is trespassory; (6) whether adverse possession may be maintained as an affirmative defense to trespass here; and (7) whether adverse possession pled simply as an affirmative defense permits the delineation of a new boundary line.[1] The court then concluded that: (1) "the spread of bamboo into [the appellants' p]roperty is a nuisance[;]" (2) "the bamboo is trespassory[;]" (3) because "the relief sought by [the appellants] is solely equitable" Code § 8.01-230 permits the suit despite the statute of limitations on trespass and nuisance actions articulated in Code § 8.01-243; (4) the doctrine of laches does not apply to bar the appellants' claim; (5) the fence was trespassory; (6) the appellees could maintain adverse possession as an affirmative defense and that they had succeeded in

---

[1] The circuit court also addressed other nuisance claims brought by the appellants, but those counts are not relevant on appeal.

proving the defense; and (7) that the circuit court could declare a new boundary line and that said line was the fence line.

By order entered March 9, 2022, the circuit court directed the appellees "to take permanent measures to control the bamboo in the area where it is currently planted proximate to [the appellants'] shed in such a manner that it does not grow under or over ground past the boundary of [the appellees'] property nor contact the roof of [the appellants'] shed, even in times of wind, ice or snow." The circuit court also held that adverse possession can be pled as an affirmative defense, rejecting the appellants' assertion that adverse possession had to be pled as a counterclaim. The circuit court further found that here "the evidence supports the erection and continual maintenance of the fence, and exclusive use of the area it encloses by [the appellees] for in excess of fifteen years prior to the institution of this suit." The circuit court further held that the appellees "have met their burden of proof of their affirmative defense of adverse possession by clear and convincing evidence," and as a result, the circuit court found "the base of the fence thus delineates the new boundary line between the parties' adjacent lands."

The appellants moved for reconsideration of the March 9 order, assigning error to the circuit court's declaring a new boundary line. In the motion, the appellants argued that since the appellees only raised adverse possession as an affirmative defense to their trespass and nuisance claims, the circuit court lacked jurisdiction to declare a new boundary line when the relief was not sought through the filing of a cross-claim. The appellants also argued that the appellees failed to establish adverse possession with respect to the area beneath the eave of the appellants' shed which overhung the boundary fence.

In response, the appellees filed a brief in opposition to the appellants' motion for reconsideration as well as a cross-motion for reconsideration of the March 9 order. In the cross-motion, the appellees assigned error to the circuit court's finding that the bamboo

constituted a nuisance based on "key factual errors made by the [circuit c]ourt in support of its decision." The appellees also contended that the appellants had failed to prove that the bamboo encroaching on the appellants' property had, in fact, migrated from the appellees' property. The appellees also argued in their cross-motion that "aside from [Ms.] Willems['] testimony that the replacement roof was 'scratched' by bamboo from [the appellees'] property leaning over the fence, there was no evidence at all of any actual damage to [the appellants'] property." In addition, the appellees assigned error to the circuit court's finding to the extent that it required any remedy beyond self-help. Finally, the appellees assigned error to the circuit court's interpretation of Code § 8.01-230 as permitting the appellants' suit despite the applicable statute of limitations.

In a second letter opinion dated April 21, 2022, the circuit court generally reaffirmed its prior March 6 letter opinion and its March 9 order. However, the circuit court did opine in greater detail as to "why no follow-on court proceeding is necessary to establish anew the factual finding of the new boundary[.]" The circuit court began by acknowledging that the appellees only asserted adverse possession as an affirmative defense but concluded that "the precedent and dicta as cited in [the circuit court]'s Letter Opinion of March 6, 2022, establishes that the Supreme Court of Virginia has not foreclosed the assertion of adverse possession through the alternate vehicle of an affirmative defense." The circuit court further opined that "[o]nce adverse possession is established in this case, the holding is binding on the same litigants and those with whom they are in privity in the future." Therefore, the circuit court reasoned that its "holding as to adverse possession is a judgment determining the new boundary line, not just an idle declaration to be revisited in the future," and, "[i]t would be in derogation of guidance from the Supreme Court of Virginia for the [circuit c]ourt to hold that, although the adverse possession

claim is established defensively, a secondary suit would nevertheless be requisite again to establish the fact the fence constitutes the property line separating the parties' lands."

The circuit court also addressed in its April 21 letter opinion the degree of interference with a boundary fence it deemed necessary to defeat the exclusivity necessary for a claimant to sustain an adverse possession claim. The circuit court initially concluded "that the [appellant]s' shed roof eave, to the extent that it overhangs any part of [the appellee]s' fence where such fence extends over onto [the appellant]s' land, does not interrupt the exclusivity or continuity of the fence that [the appellee]s maintained over 15 years so as to break the establishment of adverse possession." In support thereof, the circuit court reasoned that where "a person is deemed to be in actual possession of the land of another through fencing that shuts out the rightful owner," for the rightful owner to defeat the possessor's adverse possession by interfering with the possessor's exclusive possession, the rightful owner must act "against such adverse possessor in a manner that interferes with how the land would be used by an average owner exercising dominion over such terrain[.]" Therefore, because "[l]ike continuity, exclusivity requires 'only that the land be used for the statutory period as an average owner of similar property would use it[,]' . . . *Vezey v. Green*, 35 P.3d 14, 22 (Alaska 2001)," the circuit court found that the eave overhanging the fence was not an interference with use of the land as an average owner would use it. This appeal followed.

## II. ANALYSIS

### A. *Standard of Review*

"Issues of adverse possession and prescription present mixed questions of law, reviewed de novo, and fact, to which the reviewing court gives deference to the determination of the trial court." *Scott v. Burwell's Bay Imp. Ass'n*, 281 Va. 704, 709 (2011).

"[A]ll trial court rulings come to an appellate court with a presumption of correctness." *Wynnycky v. Kozel*, 71 Va. App. 177, 192 (2019) (quoting *Stiles v. Stiles*, 48 Va. App. 449, 453

(2006)). "In challenging [a] court's decision on appeal, the party seeking reversal bears the burden to demonstrate error on the part of the trial court." *Sobol v. Sobol*, 74 Va. App. 252, 272-73 (2022) (quoting *Barker v. Barker*, 27 Va. App. 519, 535 (1998)). Legal questions are reviewed de novo. *Jessee v. Jessee*, 74 Va. App. 40, 50 (2021). "A factual determination cannot be reversed on appeal unless it is 'plainly wrong or without evidence to support it.'" *Friedman v. Smith*, 68 Va. App. 529, 543 (2018) (quoting *Congdon v. Congdon*, 40 Va. App. 255, 261 (2003)). "For those matters . . . that fall within the [trial] court's discretion, this Court cannot determine that an abuse of discretion has occurred unless 'reasonable jurists could not differ' on the conclusion that the court erred." *Jessee*, 74 Va. App. at 49. If a trial court's factual determination turns on the credibility of testifying witnesses and relies on testimony heard ore tenus, we are bound by the trial court's determination. *Anderson v. Anderson*, 29 Va. App. 673, 686 (1999) ("It is well established that the trier of fact ascertains a witness' credibility, determines the weight to be given to their testimony, and has the discretion to accept or reject any of the witness' testimony." (quoting *Street v. Street*, 25 Va. App. 380, 387 (1997) (en banc))).

"[W]hether a claim is barred by the statute of limitations is a question of law . . . ." *Philip Morris USA, Inc. v. Mease*, 62 Va. App. 190, 198 (2013) (quoting *Tuck v. Goodyear Tire & Rubber Co.*, 47 Va. App. 276, 284 (2005)). "Statutory construction presents a question of law . . . ." *Sorrell v. Commonwealth*, 74 Va. App. 243, 246 (2022). "[W]hether under the circumstances of a given case a claim is barred by laches is primarily a decision resting within the discretion of the trial court." *Murphy v. Holland*, 237 Va. 212, 215 (1989) (quoting *Morris v. Mosby*, 227 Va. 517, 521 (1984)).

B. *Adverse possession was not sufficiently plead.*

The appellants contend that the circuit court lacked jurisdiction necessary to declare a new boundary line because the appellees failed to file a cross-claim and pray for the declaration of a new boundary line. We agree.

A foundational rule of pleading in Virginia is that only the relief a party requests may be granted.

> The basis of every right of recovery under our system of jurisprudence is a pleading setting forth facts warranting the granting of the relief sought. It is the sine qua non of every judgment or decree. No court can base its decree upon facts not alleged, nor render its judgment upon a right, however meritorious, which has not been pleaded and claimed. . . . Pleadings are as essential as proof, the one being unavailing without the other. A decree cannot be entered in the absence of pleadings upon which to found the same, and if so entered it is void. . . . Every litigant is entitled to be told by his adversary in plain and explicit language what is his ground of complaint or defense. . . . The issues in a case are made by the pleadings, and not by the testimony of witnesses or other evidence.

*Ted Lansing Supply Co., Inc. v. Royal Aluminum and Const. Corp.*, 221 Va. 1139, 1141 (1981) (alterations in original) (quoting *Potts v. Mathieson Alkali Works*, 165 Va. 196, 207 (1935)).

Here, the appellees failed to request in a responsive pleading that the circuit court declare a new boundary line or to grant them title to the disputed strip of property. The appellants filed a complaint alleging that the location of the fence previously constructed by the appellees constituted a trespass upon their land, and in their prayer for relief, the appellants requested the circuit court to order the appellees to remove the fence. The appellees timely responded to the complaint by filing an Answer which included the affirmative defense of "Adverse Possession." The appellees failed to file a cross-claim or to pray for relief including but not limited to the declaration of a new boundary or the transfer of title to the disputed portion of land owned by the appellants. The only facts alleged by the appellees in their Answer related to adverse possession

- 10 -

were alleged in affirmatively defending against the appellants' trespass claim: "The [appellee]s established a boundary line via maintenance of a fence between the two lots owned by the parties[,]" and the "[appellee]s have maintained a fence on a portion of the lot that has the address 3503 Thomas Court for greater than 15 years." In addition, the declaration of adverse possession as one of the affirmative defenses in the Answer failed to pray for any relief except to "deny the relief sought by the [appellant]s and dismiss this action with prejudice." There being no cross-claim filed in this case nor an order of the circuit court indicating that it viewed the Answer as sufficing as a cross-claim, the appellants never responded nor prepared to defend against a claim seeking the declaration of a new boundary line based on adverse possession of their land. Instead, the appellants were only provided notice, based on the pleadings, that the appellees intended to affirmatively defend the trespass action based on the affirmative defense of adverse possession. Since the circuit court granted relief not sought, the circuit court lacked jurisdiction to grant said relief, and the relief is void.

We agree that adverse possession may be couched as an affirmative defense. *See Sutherland v. Gent*, 121 Va. 643, 646 (1917); *Howard v. Ball*, 289 Va. 470, 474 (2015); *Smith v. Woodlawn Constr. Co., Inc.*, 235 Va. 424, 430 (1988). However, pleading adverse possession as an affirmative defense, rather than as a cross-claim, does not abrogate the fundamental requirement that only relief affirmatively requested in a pleading may be granted by a circuit court. *See Ted Lansing Supply Co., Inc.*, 221 Va. at 1141.

Here, the circuit court lacked jurisdiction to declare a new boundary line because no such relief was affirmatively pled. The only relief sought by the appellees was denial of "the relief sought by the [appellant]s and dismiss[al] [of] this action with prejudice[,]" and such is all the relief the circuit court can give here. Thus, we reverse and remand this matter to the circuit court for further proceedings consistent with this ruling. In addition, since we reverse and remand on

the appellants' first assignment of error, we decline to address the appellants' second assignment of error alleging that the circuit court erred in granting the appellees title to a portion of the property along the fence overhung by the eave of the appellants' shed.

### C. *The circuit court based its nuisance ruling solely on facts in evidence.*

In the appellees' cross-error, they assign error to the circuit court's ruling that the bamboo proliferated from the appellees' property to the appellants' property, causing a nuisance. Specifically, the appellees contend that the circuit court's finding that bamboo proliferated from the appellees' property is unsupported by the evidence. The appellees further contend that the circuit court's finding that the appellants' property was damaged by the bamboo is also unsupported by the evidence. We disagree.

Here, Ms. Willems testified that the bamboo growing on the appellees' side of the fence constantly spread to her side of the fence. She testified that she had installed a barrier, but the bamboo managed to grow around the ends of it. She also testified that it was a constant labor to keep the rhizomes and shoots of bamboo in check and that the bamboo growing next to the shed had damaged the edge of the shingles on the shed's roof. Mr. Batcheller also testified that he planted bamboo in his yard in the area in question. Given the deferential standard of review, we find that there was a sufficient factual basis in the evidence for the circuit court to conclude both that the bamboo proliferated from the appellees' yard to the appellants' yard and that the appellants' property was damaged as a result.

### D. *The circuit court did not err in concluding that the appellees' bamboo constitutes a trespass and nuisance.*

The appellees cross-assign error to the circuit court's application of the test articulated in *Fancher v. Fagella*, 274 Va. 549 (2007). The appellees assert that the evidence failed to sufficiently prove that the proliferation of bamboo caused any actual damage to the appellants' property. The appellees further contend that the circuit court misinterpreted the applicable test

enunciated in *Fancher* and should have ruled that only self-help was available to the appellants

as a remedy.  We disagree.

In *Fancher*, the Supreme Court rejected the former rule that "condition[ed] a right of

action upon the 'noxious' nature of a plant that sends forth invading roots or branches into a

neighbor's property."  274 Va. at 555.  Finding the term "noxious" difficult to define, and the

limitation somewhat illogical, the Court adopted the "Hawaii" rule:

> [E]ncroaching trees and plants are not nuisances merely because
> they cast shade, drop leaves, flowers, or fruit, or just because they
> happen to encroach upon adjoining property either above or below
> the ground.  However, encroaching trees and plants may be
> regarded as a nuisance when they cause actual harm or pose an
> imminent danger of actual harm to adjoining property.  If so, the
> owner of the tree or plant may be held responsible for harm caused
> to [adjoining property], and may also be required to cut back the
> encroaching branches or roots, assuming the encroaching
> vegetation constitutes a nuisance.  We do not, however, alter
> existing . . . law that the adjoining landowner may, at his own
> expense, cut away the encroaching vegetation to the property line
> whether or not the encroaching vegetation constitutes a nuisance or
> is otherwise causing harm or possible harm to the adjoining party.
> Thus, the law of self-help remains intact . . . .

*Id*. at 556 (second, third, and fourth alterations in original) (quoting *Lane v. W.J. Curry & Sons*,

92 S.W.3d 355, 364 (Tenn. 2002)).

The Court further clarified that:

> Not every case of nuisance or continuing trespass . . . may
> be enjoined.  The decision whether to grant an injunction always
> rests in the sound discretion of the chancellor, and depends on the
> relative benefit an injunction would confer upon the plaintiff in
> contrast to the injury it would impose on the defendant.  Any
> burden imposed on the public should also be weighed.

*Id.* (citing *Akers v. Mathieson Alkali Works*, 151 Va. 1, 8-9 (1928)).  The Court offered guidance

which proves particularly helpful in applying the rule in this case:

> In weighing the equities in a case of this kind, the
> chancellor must necessarily first consider whether the conditions
> existing on the adjoining lands are such that it is reasonable to
> impose a duty on the owner of a tree to protect a neighbor's land

> from damage caused by its intruding branches and roots. In the absence of such a duty, the traditional right of self-help is an adequate remedy. It would be clearly unreasonable to impose such a duty upon the owner of historically forested or agricultural land, but entirely appropriate to do so in the case of parties . . . who dwell on adjoining residential lots.
>
> Further, if such a duty is found to exist on the part of the tree owner, the chancellor must determine the extent of the remedy. Under the circumstances of the case, will self-help by cutting off the invading roots and branches, followed by an award of damages to compensate the plaintiff for his expenses, afford an adequate and permanent remedy, obviating the need for an injunction? If not, will complete removal of the defendant's tree be the appropriate remedy when the equities are balanced? An affirmative answer to the latter question will necessitate mandatory injunction. As in all cases in which equitable relief is sought, the chancellor's decision must necessarily depend on the particular facts shown by the evidence, guided by traditional equitable principles.

*Id.* at 556-57.

Here, Ms. Willems testified that the bamboo encroaching on her shed from the appellees' property damaged the shingles on the shed. On appeal, the appellees fail to argue that harm from damaged shingles is insufficient to support a finding of nuisance. Instead, they argue that no evidence of harm was presented during the trial. This assertion is simply incorrect based on a cursory reading of the record. Thus, given the deferential standard of review, we cannot say the circuit court erred in concluding that the damage to the shingles supported a finding of nuisance.

Further, the circuit court did not err by granting the appellants equitable relief. As previously stated, based on *Fancher*, the appellants were not limited to the remedy of self-help. Although, in *Fancher*, the Supreme Court explained that not every nuisance warrants an injunction, the Court also explicitly explained that self-help is appropriate when "cutting off the invading roots and branches, followed by an award of damages to compensate the plaintiff for his expenses, afford an adequate and permanent remedy, obviating the need for an injunction[.]" *Id.* at 557. Here, the damage to the appellants' shed caused by bamboo growing on the

- 14 -

appellees' property when blown by wind or pushed by snow onto the appellants' shed is significant and difficult to remedy. Thus, self-help including cutting those roots and shoots which invade the appellants' yard alone will not offer sufficient relief from the actual harm caused by the bamboo. Therefore, we cannot say that the circuit court erred in finding self-help an insufficient remedy given the facts adduced at trial.

The appellees further argue that since the appellants also failed to prevent the spread of bamboo from their property onto other properties, they are not entitled to any relief regarding bamboo spreading onto their property. While it is true that "a litigant who seeks to invoke an equitable remedy must have clean hands," *Butler v. Hayes*, 254 Va. 38, 43 (1997), given the deferential standard of review, we cannot conclude that the circuit court erred here by granting the relief the appellants sought.

The statements Ms. Willems made during cross-examination, upon which the appellees rely for their conclusion that the appellants have failed to prevent the spread of bamboo from their yard to other adjoining properties, are vague and equivocal at best. The appellees' counsel attempted to establish that bamboo spreads from the appellants' property onto other adjoining lots, but we cannot conclude from our review of the record that this fact was unequivocally established. Since the exchange was so ambiguous and confusing, we cannot find error if the circuit court concluded that the testimony overall failed to establish that bamboo spreads from the appellants' property to others. Moreover, even if Ms. Willems' testimony established that bamboo was allowed to spread from the appellants' property onto other properties, it certainly does not establish that in doing so, the overgrowth caused harm to other properties. Under *Fancher*, intrusive growth only becomes an actionable nuisance when it harms or threatens imminent harm. It is because of the harm to the appellants' shed that the appellees' bamboo was found to be a nuisance. Without any testimony that bamboo originating on the appellants'

- 15 -

property was causing harm on adjoining lots, there is no evidence that the appellants' bamboo was either a nuisance or trespass since the spread of bamboo from their property alone does not constitute either. Therefore, the appellees' contention that the testimony of Ms. Willems alone proves that the appellants are guilty of the same misdeeds they accuse the appellees of and are therefore precluded from relief is misguided. For these reasons, we cannot conclude that the circuit court erred in failing to adopt the appellees' position.

Thus, the appellants were not limited to exercising self-help in managing the intruding bamboo, and there was sufficient evidence for the circuit court to conclude that the appellees' bamboo constituted a nuisance.

### E. The circuit court did not err in holding that the statute of limitations did not bar the appellants' claims.

The appellees' fourth assignment of error alleges that the circuit court erred by misinterpreting Code § 8.01-230 and finding that the statute of limitations did not bar the appellants' claims. We disagree.

When the words of the statute are "plain and unambiguous, [the Court is] bound by the plain meaning of that statutory language." *Beck v. Shelton*, 267 Va. 482, 488 (2004) (quoting *Lee Cnty. v. Town of St. Charles*, 264 Va. 344, 348 (2002)).

> In every action for which a limitation period is prescribed, the right of action shall be deemed to accrue and the prescribed limitation period shall begin to run from the date the injury is sustained in the case of injury to the person or damage to property, . . . except where the relief sought is solely equitable . . . .

Code § 8.01-230. "Every action for injury to property, . . . shall be brought within five years after the cause of action accrues." Code § 8.01-243(B).

Here, the appellants pled that no sufficient remedy existed at law and were therefore seeking equitable remedies based on their claims of trespass and nuisance regarding the bamboo. Hence, by the plain terms of Code § 8.01-230, the right of action was not deemed to have

- 16 -

accrued at the time the injury began and the five-year statute of limitations does not apply to their claims.

The appellees contend that the circuit court's interpretation violates the clear Virginia precedent that "equity follows the law." *May v. R.A. Yancey Lumber Corp.*, 297 Va. 1, 19 (2019) (quoting *Belcher v. Kirkwood*, 238 Va. 430, 433 (1989)). First, we note that many of the cases cited by the appellees in support of this proposition predate the adoption of Code § 8.01-230, and clearly insofar as they are in conflict, the statute controls. As for citations after Code § 8.01-230's adoption, the appellees point to *May*. The appellees contend that in *May*, the Court recognized a "disguised breach of contract claim subject to the five-year statute of limitations" hidden in the plaintiff's equitable pleading. We disagree. In *May*, the plaintiff brought an action seeking declaratory and injunctive relief challenging certain corporate actions. *Id.* at 9. The defendant responded, in part, by arguing that plaintiff's action was precluded by the doctrine of laches and unclean hands. *Id.* The circuit court subsequently held that laches barred the plaintiff's claim. The Supreme Court reversed stating that "it is 'well-established' that 'in respect to the statute of limitations equity follows the law.'" *Id.* at 19 (quoting *Belcher*, 238 Va. at 433); *see also Kappa Sigma Fraternity, Inc. v. Kappa Sigma Fraternity*, 266 Va. 455, 467 (2003). In *Kappa*, the Supreme Court "suggest[ed] that a declaratory judgment challenging corporate amendments is like a breach of written contract claim" and observed that "[t]he statute of limitations for written contracts is five years." *May*, 297 Va. at 19. In *May* the plaintiff filed her complaint well within five years. Thus, the inference to be gleaned from *May* is that laches will not be found to bar a complaint that, were it brought at law, would be within the statute of limitations. It should not, as the appellees suggest, be taken to mean that the plain language of Code § 8.01-230 can be ignored.

The appellees further contend that applying the plain meaning of Code § 8.01-230 leads to absurd results. Although we agree that it is an established principle of statutory interpretation that "statutes are to be construed so as to avoid an absurd result," *Eastlack v. Commonwealth*, 282 Va. 120, 126 (2011) (citing *Commonwealth v. Doe*, 278 Va. 223, 230 (2009)), the absurdity alleged by the appellees to flow from this interpretation of Code § 8.01-230 is that a party may wait many years longer than the statute of limitations would allow before bringing an action so long as they limit their prayer for relief to equitable remedies, requiring a defendant to bear the burden of asserting laches. We find no absurdity here. The General Assembly has made the policy decision that simply time alone will not bar a party from bringing a request seeking equitable relief. This does not limit the viability of the doctrine of laches. Instead, where prejudice accrues to a defendant occasioned by the plaintiff's failure to assert their rights, the laches doctrine ensures that the defendant will not be disadvantaged. Therefore, the circuit court correctly concluded that the statute of limitations did not preclude the appellants' claims.

### F. *The appellees have waived their laches argument.*

The appellees next contend that the circuit court erred by ruling that the doctrine of laches failed to prevent the appellants from filing their complaint grounded in trespass and nuisance. We disagree.

"Laches is a defense against equitable claims where the plaintiff fails 'to assert a known right or claim for an unexplained period of time under circumstances prejudicial to the adverse party.'" *May*, 297 Va. at 18 (quoting *Stewart v. Lady*, 251 Va. 106, 114 (1996)). "Although laches is within the circuit court's discretion," an appellate court "will not approve such finding if the party asserting this defense fails to prove prejudice." *Id.* (quoting *Stewart*, 251 Va. at 114). Here, the appellees merely assert that the prejudice they suffered is "obvious." This bare

asserton of prejudice is insufficient for this Court to conclude that the circuit court erred in finding that laches did not bar the claims.

## III. CONCLUSION

For the foregoing reasons, we conclude that the circuit court erred in declaring a new boundary line between the appellants' and the appellees' properties. We therefore reverse this ruling of the circuit court and remand for further proceedings consistent with this judgment. We decline to address the appellants' argument regarding the overhanging eave. Regarding the cross-error of the appellees, we find no error.

*Affirmed in part, reversed and remanded in part.*